IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| GLORIA RODAS, Individually and as Administrator of the Estate of ANDREA G. RODAS, Deceased,<br>      Plaintiff,<br><br>vs.<br><br>SWEDISH AMERICAN HEALTH SYSTEM CORP., d/b/a SWEDISH AMERICAN HOSPITAL, et al.<br>      Defendants. | Case No. 05 C 50105<br><br>Magistrate Judge<br>P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

I. Introduction

On June 25, 2007, Plaintiff filed the Motion to Compel which is the subject of this order. At issue is whether documents responsive to Plaintiff's Requests to Produce are protected by the Medical Studies Act, 735 ILCS 5/8-2101. Having reviewed the parties' briefs, Defendant's privilege log, and the relevant case law on the subject, the court finds that the Medical Studies Act applies so as to protect a portion of the material identified in Defendant's privilege log.

II. Background

This is a medical negligence/wrongful death action relating to the delivery of Plaintiff's child on August 2, 2001. The suit was originally brought in the Circuit Court of Winnebago County, Illinois, and removed to the District Court pursuant to 28 U.S.C. § 1442(a) due to the

1

presence of the United States as a defendant.

Plaintiff issued a Request to Produce which sought documentation prepared prior to and after any morbidity and mortality conferences were conducted concerning Plaintiff's labor and delivery. Defendant has claimed that material responsive to Plaintiff's requests are privileged pursuant to the Medical Studies Act. The parties' efforts to resolve this dispute under Local Rule 37.2 proved unsuccessful, leading to the motion to compel.

III. Privilege Under the Medical Studies Act

The Act provides:

> All information . . . of a health care practitioner's professional competence, or other data of . . . committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services . . . .

735 ILCS 5/8-2101. The Act further provides that:

> Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person. The disclosure of any such information or data, whether proper, or improper, shall not waive or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility.

735 ILCS 5/8-2102. The idea that "information . . . or other data of . . . committees of licensed or accredited hospitals or their medical staffs . . . used in the course of internal quality control . . . shall be privileged," must be read in light of the wealth of Illinois case law which narrows the

otherwise broad scope of the Act. *Id*.

The Illinois Supreme Court noted that the legislative debate and case law addressing the Act suggests that a hospital committee "must be involved in the peer-review process before the privilege will attach." *Roach v. Springfield Clinic,* 157 Ill.2d 29, 40, 191 Ill. Dec. 1, 6, 623 N.E.2d 246, 251 (1993). The Illinois Appellate courts have taken up this suggestion, holding that the Act is limited to protecting "the mechanisms of the peer-review process– i.e., information initiated, created, prepared or generated by a peer-review committee." *Berry v. West Suburban Hospital Medical Center*, 338 Ill.App.3d 49, 55, 272 Ill.Dec. 771, 776, 788 N.E.2d 75, 80 (Ill.App.Ct. 2003), *citing Chicago Trust Co. v. Cook County Hospital*, 298 Ill.App.3d 396, 402, 232 Ill.Dec. 550, 698 N.E.2d 641 (Ill.App.Ct. 1998) (reports prepared shortly after an incident which were used by an oversight committee to review the incident were not privileged where the reports were not requested by- and thus did not belong to- a committee engaged in the peer-review process); *Grandi v. Shah*, 261 Ill.App.3d 551, 556, 199 Ill.Dec. 98, 633 N.E.2d 894 (Ill. App. Ct. 1994) (even assuming that a hospital administrator's conversations with a doctor and nurse to investigate a patient complaint were part of the hospital's internal review process, those conversations were not protected because the administrator was not acting on behalf of any peer-review committee.).

The purpose of the Medical Studies Act is to "ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Webb v. Mount Sinai Hosp. and Medical Center of Chicago*, 347 Ill.App.3d 817, 824 (Ill.App.Ct. 2004); *see also Roach*, 157 Ill.2d at 40 ("The statute is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit

3

on peer-review committees and engage in frank evaluations of their colleagues."). The Act was never intended to shield hospitals from potential liability, nor does it protect all information used for internal quality control purposes. *Webb,* 347 Ill.App.3d at 825. Documents generated before a peer-review process begins, or after it ends, are not protected. *Webb,* 347 Ill.App.3d at 825.

With the scope and purpose of the Medical Studies Act in mind, the court will determine whether the documents identified in Defendant's privilege log fall under the protection of the Act.

IV. Whether Documents Identified in Defendant's Privilege Log are Privileged

    A. The Quality Control Reports from August 2, 2001

Pursuant to its bylaws, Defendant has a standing committee on Quality Assessment and Improvement which meets bi-monthly to "monitor and evaluate objectively and systematically the quality and appropriateness of patient care delivered at the hospital." Bylaws, Exhibit A to Defendant's Response at 47. Defendant's Quality Assessment and Improvement Committee has requested that certain information related to patient morbidity and mortality be routinely collected on its behalf. Specifically of interest to this committee is information concerning medical occurrences involving patients "coding" during treatment, being injured, receiving an infection, or receiving incomplete emergency room or outpatient care.

Such information is collected in Quality Control Reports ("QCRs"), which are forms that are filled in contemporaneously with the medical occurrences they describe. Preprinted on the QCR forms is the following statement:

4

> The QA/I [Quality Assessment and Improvement] Committee of the Medical Staff has determined that the "Medical Occurrence" can affect patient morbidity and mortality; hence, the Committee requests that information be gathered for it and on its behalf in these instances. Such information is a quality improvement tool and is confidential under the Illinois Medical Studies Act.

Blank QCR, Exhibit B to Defendant's Response. According to the Defendant, the completion of a QCR triggers the peer-review process and any information contained in a QCR is therefore privileged under the Medical Studies Act.

The Defendant's policy of preemptively collecting information that might prove useful in subsequent peer-review proceedings presents an interesting question. If there is no peer-review committee in existence investigating the events that are described in the QCR at the time the QCR is generated, can Defendant nevertheless claim that the QCR is initiated, created, prepared or generated by a peer-review committee? *Berry*, 788 N.E.2d at 80 (the Act is limited to protecting "the mechanisms of the peer-review process– i.e., information initiated, created, prepared or generated by a peer-review committee."). If victims of medical negligence are to be entitled to *any* evidence in support of their claims, the answer must be no.

> The Illinois Supreme Court said it best:
>
> If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records. As a result, it would be substantially more difficult for patients to hold hospitals responsible for their wrongdoing through medical malpractice litigation. So protected, those institutions would have scant incentive for advancing the goal of improved patient care. The purpose of the act would be completely subverted.

*Roach*, 623 N.E.2d 246, 251. The Illinois courts have expressly disapproved of the preemptive application of the peer-review privilege which Defendant seeks to apply:

> The hospital seems to be saying its HOC [Hospital Oversight Committee] can invoke the Act's protection by declaring in advance that all incident documents prepared by the hospital staff are part of the peer-review process. The Hospital's position goes too far. Such a policy, if effective, would swallow the rule. The Act would not create exceptions to disclosure. It would make everything confidential, except for the patient's own medical records.

*Chicago Trust Co. v. Cook Co. Hospital*, 298 Ill.App.3d 396, 406, 698 N.E.2d 641, 649 (Ill.App.Ct. 1998).

In this case, the QCR's were generated the day of the Plaintiff's delivery, not after a peer-review committee initiated an investigation into the circumstances surrounding that delivery. Because the QCRs were created before the peer-review process began with respect to Ms. Rodas' care, the QCRs are not privileged under the Medical Studies Act. Defendant is to produce the QCRs by September 3, 2007.

B. Documents Concerning the Regional Perinatal Authority's November 6, 2002, Morbidity and Mortality Conference

The Illinois Department of Public Health required the Regional Perinatal Authority Conference as a part of its infant mortality reduction efforts pursuant to the Developmental Disability Prevention Act, 410 ILCS 250/1 *et seq*. Regional hospitals were required to attend and discuss perinatal deaths and submit data concerning such deaths. Exhibits three, four, five and six of Defendant's privilege log consist of a one page memorandum scheduling the November 6, 2002, morbidity and mortality conference, a six page list of cases to be discussed during the conference, three pages of handwritten notes taken during the conference and seven

pages of statistics generated for use during the conference.

Having reviewed these documents, the court has determined that they are privileged under the Medical Studies Act because they were specifically initiated, created, prepared or generated by a peer-review committee. Because this material is privileged, Defendant is not ordered to produce it.

VI. Conclusion

Plaintiff's Motion to Compel is granted in part. Defendant is to produce the QCRs by September 3, 2007.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: August 20, 2007